IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO: 3:04CV233

| | |
|---|---|
| KAREN R. TRULL,<br>      Plaintiff<br>vs.<br><br>JO ANNE B. BARNHART,<br>Commissioner of Social Security,<br>      Defendant. | )<br>)<br>)<br>)    __**ORDER**__<br>)<br>)<br>)<br>) |

**THIS MATTER IS BEFORE THE COURT** on the "Plaintiff's Motion for Summary Judgment" (Document No. 9) and "Memorandum in Support ..." (Document No. 9), both filed September 24, 2004 by Karen R. Trull, and the "Motion for Summary Judgment (Document No. 10) and "Memorandum in Support of the Commissioner's Decision" (Document No. 11), both filed October 6, 2004 by the Commissioner of the Social Security Administration. The parties have consented to magistrate jurisdiction under 28 U.S.C. § 636(c), and these motions are now ripe for disposition.

Having considered the written arguments, administrative record, and applicable authority, the undersigned finds that the Commissioner's decision to deny Plaintiff Social Security disability benefits is supported by substantial evidence. Accordingly, the undersigned will deny Ms. Trull's Motion for Summary Judgment, grant the Commissioner's Motion for Summary Judgment, and affirm the Commissioner's decision.

### I. PROCEDURAL HISTORY

On February 27, 2002, Ms. Trull applied for a period of disability, disability insurance benefits, and Supplemental Security Income benefits, alleging that she became disabled on October

1

8, 1998 as a result of a broken right foot, emphysema, tendinitis and problems with the skin on her right hand. Ms. Trull also complains of back problems. Ms. Trull's claim was denied initially and then again on reconsideration. Ms. Trull requested a hearing before an Administrative Law Judge ("ALJ"), which was held November 19, 2003. On December 15, 2003, the ALJ issued an opinion denying Ms. Trull's claim.

Subsequently, Ms. Trull filed a timely Request for Review of Hearing Decision. On March 17, 2004, the Appeals Council denied Ms. Trull's request for review, making the hearing decision the final decision of the Commissioner.

Ms. Trull filed this action on June 14, 2004, and the parties' cross-motions for summary judgment are ripe for this Court's consideration.

## II. STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 390, 401 (1971); and (2) whether the Commissioner applied the correct legal standards. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). In Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986), the Fourth Circuit defined "substantial evidence" as

> being "more than a scintilla and do[ing] more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

Id. (quoting Perales, 402 U.S. at 401).

The Fourth Circuit has made clear that it is not for a reviewing court to re-weigh the evidence or to substitute its judgment for that of the Commissioner – so long as that decision is supported by

substantial evidence. Hays, 907 F.2d at 1456 (4th Cir. 1990); see also Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972). Ultimately, it is the duty of the Commissioner, not the courts, to make findings of fact and to resolve conflicts in the evidence. Hays, 907 F.2d at 1456; King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979) ("This court does not find facts or try the case de novo when reviewing disability determinations."); Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistences in the medical evidence, and that it is the claimant who bears the risk of nonpersuasion.") Indeed, so long as the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court disagrees with the final outcome. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

### III. DISCUSSION OF CLAIM

The question before the ALJ was whether – at any time prior to June 30, 1999 – Ms. Trull became "disabled" as that term of art is defined for Social Security purposes.[1] The ALJ considered the evidence and concluded in his written opinion that Ms. Trull is status-post ankle fracture with residuals and has chronic obstructive pulmonary disease; that no impairment or combination of impairments meets or medically equals one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4; that Ms. Trull retains the residual function capacity to perform "light" or "sedentary" work, with the added need to sit most of the time and to avoid exposure to

---

[1] Under the Social Security Act, 42 U.S.C. § 301, et seq., the term "disability" is defined as an:
> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months ....

Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995).

environmental pollutants; and that, based upon that residual functional capacity, Ms. Trull could perform her past relevant work as a data control supervisor. Accordingly, the ALJ concluded that Ms. Trull was not under a disability as defined for Social Security purposes.

Ms. Trull contends on appeal that the ALJ erred in his evaluation of her residual functional capacity. Specifically, Ms. Trull contends that the ALJ erred by not properly evaluating her complaints of pain. The undersigned concludes, however, that the ALJ's assessment of Ms. Trull's subjective complaints of pain were proper. The undersigned further concludes that substantial evidence supports the ALJ's findings regarding Ms. Trull's residual functional capacity, as well as the ultimate conclusion that Ms. Trull was not disabled.

The Social Security Regulations define "residual functional capacity" as "what [a claimant] can still do despite his limitations." 20 C.F.R. § 404.1545(a). The Commissioner is required to "first assess the nature and extent of [the claimant's] physical limitations and then determine [the claimant's] residual functional capacity for work activity on a regular and continuing basis." 20 C.F.R. § 404.1545(b). The residual functional capacity assessment is based on all the relevant evidence, including observations by treating or examining physicians. 20 C.F.R. § 404.1545(a).

In challenging the ALJ's assessment of her residual functional capacity, Ms. Trull objects to the ALJ's assessment of her subjective complaints of pain. Specifically, Ms. Trull claims that there was objective medical evidence in the record of a physical impairment that could be reasonably expected to produce the alleged pain, and that the ALJ failed to consider the evidence of pain, to evaluate the intensity and persistence of pain, and to make a credibility finding.

The undersigned concludes, however, that the ALJ's treatment of Ms. Trull's complaints of pain was proper. The determination of whether a person is disabled by non-exertional pain or other

4

symptoms is a two-step process. "First, there must be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged." Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996) (citing 20 C.F.R.§ 416.929(b), § 404.1529(b); 42 U.S.C. § 423(d)(5)(A)). If there is such evidence, then the ALJ must evaluate "the intensity and persistence of the claimant's pain, and the extent to which it affects [her] ability to work." Id. at 595 (citing 20 C.F.R. § 416.929(c)(1), § 404.1529(c)(1)). The regulations provide that this evaluation must take into account:

> not only the claimant's statements about his or her pain, but also "all the available evidence," including the claimant's medical history, medical signs, and laboratory findings; any objective medical evidence of pain (such as evidence of reduced joint motion, muscle spasms, deteriorating tissues, redness, etc.); and any other evidence relevant to the severity of the impairment, such as evidence of the claimant's daily activities, specific descriptions of the pain, and any medical treatment taken to alleviate it.

Id. (citations omitted).

The record contains evidence of Ms. Trull's chronic obstructive pulmonary disease and her status post-ankle fracture with residual effects, which could be expected to produced some of the pain claimed by Ms. Trull. The ALJ – by concluding that Ms. Trull suffered from severe impairments – implicitly found that Ms. Trull could satisfy the first prong of the test articulated in Craig. The ALJ next evaluated the "intensity and persistence of [her] pain, and the extent to which it affects [her] ability to work." Id. In this case, the record before the ALJ clearly established an inconsistency between Ms. Trull's claims of inability to work, the objective medical findings, and Ms. Trull's objective ability to carry on with certain daily activities. The ALJ noted that – although Ms. Trull experiences shortness of breath and uses an inhaler twice a day – she continued to smoke.

5

On August 16, 2001, Ms. Trull was examined by Dr. Lesia L. Tyson at Waxhaw Family Physicians and was told that there were no signs of advanced chronic obstructive pulmonary disease. On September 10, 2001, Dr. Jay Hendler at Presbyterian Hospital reviewed certain tests performed at Waxhaw Family Physicians, noted that Ms. Trull's FEV-1 was down to 62% of predicted, and formed the impression that Ms. Trull had "moderate" obstructive pulmonary disease. Dr. Hendler recommended a change in Ms. Trull's medication and that Ms. Trull stop smoking.

As the ALJ appropriately noted, Ms. Trull testified that her foot hurt when she had to stand in one spot for more than fifteen minutes and that her back pain prevented her from sitting for long periods of time. Ms. Trull also testified, however, that she cooks occasionally, goes to church every Sunday and uses only over-the-counter medications to relieve her pain. Ms. Trull further testified that each morning, she drives her niece to work and then takes her great-niece to school and that she is able to go to the grocery store to pick up a couple of items. In the Reconsideration Disability Report, dated May 10, 2002, Ms. Trull averred that she was able to take care of her personal needs if she took her time. In a report prepared by Dr. Joseph Estwanik of Metrolina Orthopaedic, Dr. Estwanik noted that Dr. Joseph King – who treated Ms. Trull immediately after the accident which caused the foot injury – felt that Ms. Trull "would be more suited to a sit down work activity rather than a standing occupation."

As the Fourth Circuit has noted, it is the ALJ's responsibility, not the Court's, "to reconcile inconsistencies in the medical evidence." Seacrist, 538 F.2d at 1056-57. The undersigned concludes that the ALJ properly considered and evaluated Ms. Trull's subjective complaints of pain and that substantial evidence supports the ALJ's conclusion.

As noted above, the residual functional capacity assessment is based on all the relevant

evidence. 20 C.F.R. § 404.1545(a). In determining Ms. Trull's residual functional capacity, in addition to the ALJ's assessment of Ms. Trull's complaints of pain, the ALJ also properly considered the Agency medical consultants' opinions. 20 C.F.R. § 404.1527(f)(2). On April 15, 2002, an Agency medical consultant completed a Physical Residual Functional Capacity Assessment and found that Ms. Trull could occasionally lift and/or carry fifty pounds, could frequently lift and/or carry twenty five pounds, could stand and/or walk (with normal breaks) for a total of about six hours in an eight-hour work day; could sit (with normal breaks) for a total of about six hours in an eight-hour workday and had unlimited ability to push and/or pull. The Agency consultant determined that Ms. Trull had no postural limitations, no manipulative limitations, no visual limitations, no communicative limitations and no environmental limitations. On July 11, 2002, Dr. Edward Woods, another Agency medical consultant, completed a Request for Evaluation of Medical Severity and affirmed the April 2002 Physical Residual Functional Capacity Assessment.

On April 7, 2002, Dr. Tyler I. Freeman, an Agency medical consultant, prepared an evaluatory report. Dr. Freeman noted that Ms. Trull's lungs were "[c]lear to percussion and auscultation" and noted that there were "[n]o rales, rhonchi, wheezing or other adventitious sounds." Dr. Freeman also noted Ms. Trull's "old injury to the right foot," "a prominent bony area on the top of the right foot," and "difficulty in performing the heel-toe maneuvers." Taking all of the evidence into account, and specifically imposing limitations related to Ms. Trull's subjective complaints, the ALJ concluded that Ms. Trull retained the ability to perform "sedentary" work or "light" work, in which she can sit most of the time and avoid exposure to environmental pollutants.

Based on the foregoing, the undersigned concludes that substantial evidence supports the ALJ's determination that Ms. Trull has a residual functional capacity for "sedentary" work or "light"

work, in which she can sit most of the time and avoid exposure to environmental pollutants. Because substantial evidence supports the finding that Ms. Trull has a residual functional capacity for "sedentary" work or "light" work, in which she can sit most of the time and avoid exposure to environmental pollutants; and Ms. Trull does not appeal the ALJ's determination that – given that residual functional capacity – she can return to her past relevant work, Ms. Trull is not disabled for Social Security purposes.

## V. ORDER

Accordingly, **IT IS HEREBY ORDERED THAT**

1. The "Plaintiff's Motion for Summary Judgment" (Document No. 9) is **DENIED**; the Commissioner's "Motion for Summary Judgment (Document No. 10) is **GRANTED**; and the Commissioner's decision is **AFFIRMED**.

2. The Clerk is directed to send copies of this Memorandum and Order to counsel for the parties.

**Signed: September 15, 2005**

_____
David C. Keesler
United States Magistrate Judge